UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MICHELLA WEBER, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO:  4:18-cv-88 |
| MORGAN FOODS, INC. | ) ) ) ) |
|     Defendant. | ) ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

### I. NATURE OF THE CASE

1. Plaintiff, Michella Weber ("Weber"), brings this Complaint against the Defendant, Morgan Foods, Inc., ("Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*.

### II. PARTIES

2. Weber is a resident of Austin, Indiana, who at all times relevant to this action resided within the geographical boundaries of the Southern District of Indiana.

3. Defendant maintains offices and conducts business within the geographical boundaries of the Southern District of Indiana.

### III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; and 42 U.S.C. §2000e-5(f)(3).

5. Defendant is an "employer" as that term is defined by 42 U.S.C. §2000e(b).

6. Weber was an "employee" as that term is defined by 42 U.S.C. §2000e(f).

1

7. Weber satisfied her obligation to exhaust her administrative remedies having timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against the Defendant alleging sex discrimination. Weber received the required Notice of Sue Rights and timely files this action.

8. A substantial part of the events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Southern District of Indiana; thus, venue is proper in this Court.

### IV.  FACTUAL ALLEGATIONS

9. Weber was hired by the Defendant on or about August 15, 2005, as a Labor Operator.

10. Throughout all relevant times, Weber met or exceeded Defendant's legitimate performance expectations.

11. In or about October 2014, Weber applied for a maintenance position. Defendant allowed its employees to apply for the maintenance position by allowing employees to place their name on a posted list. Weber placed her name on the list.

12. In or about October 2014, Weber's name was removed from the list by Justin Teipen ("Teipen"). Teipen's reasoning for removing Weber's name was that Weber did not sign up in time. Weber was the fourth employee to sign the list. Similarly-situated male co-workers who signed up after Weber were not removed from the list.

13. In or about October 2014, Weber complained to the Chief Union Steward, James Clemmons ("Clemmons") and Union Steward, Markus Fleenor ("Fleenor"). Clemmons and Fleenor met with Teipen and Supervisor, Bob Wormly, and asked for Teipen's reason for removing Weber from the list. Clemons and Fleenor were told that Weber did not sign up in

time. However, Bob Wormly told Teipen to place Weber's name back on the list. Weber's name was put back on the list.

14. On or about October 13, 2014, the Defendant held a class for new maintenance employees. Weber was the only female. Similarly-situated males in the class were provided advance notice of the date the class would begin. Weber was not provided notice until October 13, 2014—the day the class began.

15. On or about October 13, 2014, Teipen told Weber to leave the maintenance class and return to her previous labor operator position to train someone. Weber told Teipen and Doan Edmundson ("Edmunson") that there were two extra, trained labor operators who could provide training. Weber was told to leave the maintenance class and provide training. Weber was not allowed to finish the maintenance class. Other similarly-situated males in the class were allowed to finish the class.

16. In or about October 2014, after being removed from the maintenance class, Weber approached her previous supervisor and inquired about who she was supposed to train. Her supervisor's response was, "nobody that I know of, they just told me you were being sent back". Weber also approached Richard Miller ("Miller"), supervisor of the Wareroom, and inquired about who she was supposed to train. Miller's response was, "I don't know what's going, that's my story and I'm sticking to it".

17. Defendant didn't provide anyone for Weber to train the entire week, despite telling Weber the contrary. Weber complained to Clemmons, the Chief Union Steward.

18. In or about October 2014, Clemmons met with Teipen and Wormly to inquire about the reason Weber was not allowed to finish the maintenance class. After the meeting, Weber was told to return to her maintenance position the following week.

19. On or about October 20, 2014, Weber started in maintenance, in the Retort Department. Weber was not provided a trainer for her new position in the Retort Department. Other similarly-situated male maintenance employees, Jeremiah Justice and Shannon Cockerham received training from David McMahon and David Vires.

20. On or about December 15, 2014, Weber was transferred to the Meat Products Department to train as a line mechanic.

21. On or about January 20, 2015, Weber was transferred to Processing to be a line mechanic while other similarly-situated males who started on the same date as Weber were allowed to participate in "JBT" training, which consisted of one week of class and one week of hands on training.

22. In or about March 2015, the male maintenance employees who started on the same date as Weber, were allowed to attend "better processing school". Weber, the only female, was not allowed to attend the "better processing school".

23. In or about April 2015 and May 2015, Weber's supervisor, Jack Perkinson ("Perkinson") prevented Weber from completing the training that other similarly-situated male maintenance employees completed. Perkinson also required Weber to do other tasks that males were not required to do such as clean the locker area, scrub the floor, clean the shop, and retrieve paper from the printer.

24. Defendant's failure to provide Weber with training prevented Weber from achieving "Level 4", which other similarly situated males achieved after receiving training. Achieving "Level 4" would have entitled Weber to significantly more pay.

25. On or about August 29, 2015, Perkinson was upset about a maintenance employee, charged in Weber's direction, grabbed Weber by both arms, and yelled at her while he

physically shook her into a can line.  Perkinson was placed on one-year probation by the Defendant and a sexual harassment write-up was placed in his personnel file for inappropriately touching Weber.

26.   Perkinson continued to prevent Weber from completing training after the incident that occurred on August 29, 2015.

27.   In or about February 2016, Perkinson called Weber to his office to confront her about a broken machine part.  When Weber arrived, Perkinson said, "do you see that door?  Its open for a good reason."  Perkinson described being placed on probation and receiving the sexual harassment write-up as "petty".  Perkinson pointed at a picture on his file cabinet and asked, "do you see that picture?  That is my wife.  Do you know what that did to her?"  Perkinson then said, "you wouldn't go to a gas station and steal a gallon of gas or a candy bar.  That would be petty.  The next time I get in trouble, it will be for something big.  Big like taking a gun and blowing something's brains out.  Are you with me?  Do we have an understanding?"  Weber responded, "yes Jack we do".  Weber then exited the office.

28.   Weber did not immediately report the incident to human resources because she was fearful that if Perkinson was disciplined, he would shoot her.

29.   On or about April 4, 2016, Weber called Defendant's Chief Executive Officer, John Morgan ("Morgan") to report the incident that occurred in Perkinson's office.  Weber left a voicemail message on Morgan's cellphone.  Morgan called Weber and stated that he would have the incident investigated.  Weber was never apprised of whether an investigation occurred.

30.   In or about May 2016, three similarly-situated male maintenance employees were sent to seamer school.  Anthony Bus ("Bus"), a male maintenance employee was sent to seamer

school.  Weber had worked in the maintenance department longer than Bus, but she was not sent to seamer school.

31.  In or about May 2017, Weber filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  After Weber filed her Charge of Discrimination with the EEOC, three male maintenance employees, John Cooper, Matt Harden and Kevin Brown were allowed to complete additional training.  Weber was not allowed to complete the same training.

32.  In or about May 2017, Defendant transferred Sylvia Madden ("Madden") to the maintenance department.  Ethan Purcell ("Purcell"), a supervisor, told Madden, "you're being discriminated against just like Michella".

33.  In or about July 2017, Weber complained to human resources about being treated unfairly.

34.  On or about July 25, 2017, Weber's supervisor, Keith Napier ("Napier") cussed and yelled at Weber.  Weber left work due to Napier's behavior.

35.  On or about July 28, 2017, Weber resigned due to the hostile work environment.

## V.  CAUSES OF ACTION

### COUNT I: GENDER DISCRIMINATION—TITLE VII

36.  Weber hereby incorporates by reference paragraphs one (1) through thirty-five (35) of her Complaint as if the same were set forth at length herein.

37.  Weber was subjected to different terms and conditions of her employment based on her gender.

38.  Weber was harassed and subjected to a hostile work environment in a severe and pervasive manner.

39. Defendant's actions are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq*.

40. Defendant's actions were willful, intentional and done with reckless disregard for Weber's legally protected rights.

41. Weber has suffered damages as a result of Defendant's unlawful actions.

### COUNT II: RETALIATION—TITLE VII

42. Weber hereby incorporates by reference paragraphs one (1) through forty-one (41) of her Complaint as if the same were set forth at length herein.

43. Defendant retaliated against Weber for having engaged in protected activity when it subjected her to a hostile work environment due to her complaints.

44. Defendant's actions violated the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964.

45. Defendant's actions were intentional, malicious and done with reckless disregard for Weber's legally protected rights.

46. Weber has suffered damages as a result of Defendant's actions.

### V.   REQUESTED RELIEF

WHEREFORE, Plaintiff, Michella Weber, respectfully requests that this Court enter judgment in her favor and award her the following relief:

1. All wages, benefits, compensation and other monetary loss suffered as a result of Defendant's unlawful actions;

2. Compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

3. Compensatory damages for Defendant's violations of Title VII;

4. Punitive damages for Defendant's violation of Title VII;

5. Costs and attorney's fees incurred as a result of bringing this action;

6. Pre- and post-judgment interest on all sums recoverable; and

7. All other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

/s/Andrew Dutkanych III
Andrew Dutkanych III, Atty No. 23551-49
411 Main Street
Evansville, Indiana 47708
Telphone:    (812) 424-1000
Facsimile:   (812) 424-1005
Email:       ad@bdlegal.com
*Counsel for Plaintiff, Michella Weber*

## DEMAND FOR JURY TRIAL

Plaintiff, Michella Weber, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

BIESECKER DUTKANYCH & MACER, LLC

/s/Andrew Dutkanych III
Andrew Dutkanych III, Atty No. 23551-49
411 Main Street
Evansville, Indiana 47708
Telphone:    (812) 424-1000
Facsimile:   (812) 424-1005
Email:       ad@bdlegal.com
*Counsel for Plaintiff, Michella Weber*